CHICAGO, R. I. & P. RY. CO. v. ANDER-
SON et al.

(Supreme Court of Texas.   Dec. 20, 1911.)

1. AMICUS CURIÆ (§ 3*)—POWERS—SUGGES-
TION OF WANT OF SERVICE.

The court may consider a suggestion of an
amicus curiæ that there has been no valid
service against defendant.

[Ed. Note.—For other cases, see Amicus
Curiæ, Cent. Dig. §§ 3–5; Dec. Dig. § 3.*]

2. JUDGMENT (§ 144*) — DEFAULT — SETTING
ASIDE DEFAULT—MERITORIOUS DEFENSE.

An amicus curiæ, afterwards acting as
counsel for defendant, on the day before the
appearance day filed a suggestion that there
had been no valid service on the defendant, and
on plaintiff's motion for judgment of default
the trial court heard arguments and postponed
its decision, and the day after the defendant's
answer was filed the trial court entered default
judgment for plaintiff; neither plaintiff nor the
court then having knowledge of the answer
filed. Held, that a motion to set aside the de-
fault, alleging a meritorious defense, should
have been granted.

[Ed. Note.—For other cases, see Judgment,
Cent. Dig. § 255; Dec. Dig. § 144.*]

Error to Court of Civil Appeals of Sixth
Supreme Judicial District.

Action by Neil P. Anderson and others
against the Chicago, Rock Island & Pacific
Railway Company. From a judgment by de-
fault for plaintiffs, affirmed by the Court of
Civil Appeals (130 S. W. 182), defendant
brings error.   Reversed and remanded.

N. H. Lassiter, for plaintiff in error. Wm.
J. Berne, for defendants in error.   Robert
Harrison, amicus curiæ.

RAMSEY, J.   Suit was instituted in the
district court of Tarrant county by Neil P.
Anderson & Co., against the Chicago, Rock
Island & Pacific Railway Company; the pe-
tition alleging, in substance, that said com-
pany was a corporation, but without any
other or further averment as to whether it
was a domestic or foreign corporation; and
alleging, further, that J. W. Robins, who is
alleged to reside in Tarrant county, Tex.,
was the local agent of said railway company.
Service in said county was had on Robins in
due time, and return made by the sheriff,
stating that the citation had been duly serv-
ed by delivery to Robins in person, in the
city of Ft. Worth, in Tarrant county, a true
copy of the writ, and that Robins was then
and there the local agent of the said railway
company, representing it in said county. On
February 1, 1909, the day before the appear-
ance day of said court to which suit was
brought, there was filed in said cause by the
said J. W. Robins, the following affidavit:
"Now comes J. W. Robins, and makes oath
and says that he is the general superintend-
ent of the Chicago, Rock Island & Pacific
Railway Company, and is not an agent of
any character for it in Tarrant county, and
that the said company is a foreign corpora-
tion, and not doing business in the state of

Texas, and has never done business in the
state of Texas." There was also filed at the
same time by Robert Harrison, appearing as
amicus curiæ, the following suggestion: "Now
comes Robert Harrison, as amicus curiæ, and
respectfully shows to the court that there is
on file an affidavit of J. W. Robins to the
effect that the defendant, the Chicago, Rock
Island & Pacific Railway Company, is not
doing business in the state of Texas, and
has never done any business in the state of
Texas, and is not an agent of any character
for said company in Tarrant county, Tex.;
wherefore, the said Robert Harrison respect-
fully calls the court's attention to the fact
that there is no valid service in this case
against the said defendant." On the follow-
ing day (February 2, 1909), on the calling of
the appearance docket, counsel for Anderson
& Co. demanded judgment by default, and
on the same day said counsel filed a motion
to strike out Robins' affidavit, and, in sub-
stance, praying a judgment by default. This
motion was to the effect that Robins was not
a party to the cause; that the affidavit was
irrelevant and immaterial, and seeks to
raise an issue that the railway company is a
foreign corporation, and that such issue could
not be raised by the affidavit of Robins, an
outsider, or by Harrison, as amicus curiæ,
but could only be raised by defendant; that
if these matters were decided adversely to
Robins it would not affect or bind the de-
fendant, while, if decided adversely to plain-
tiffs, it would be binding on them, and that
the allegations stated conclusions only, and
did not state issuable facts.   And, further,
that the affidavit on its face shows that
the defendant was doing business in the
state, in that it shows that said railway
company had sufficient business in the state,
and was doing such a business therein, as is
sufficient to keep in this state and county
its general superintendent. The question was
not at the time decided, but during the day
the court heard argument touching the is-
sues thus raised, and, at the conclusion there-
of, announced, in substance, that the matter
would be postponed until the following Sat-
urday, February 6, 1909.

There was some dispute as to the facts at
this point. Mr. Berne, who represented the
plaintiffs in the case, testified that "at the
conclusion of the argument the court an-
nounced that he would render his decision at
9:00 o'clock on February 6th, and his deci-
sion was deferred, with the understanding
that the rights of all the parties should be
preserved as they were on appearance day."
This was not admitted by Mr. Harrison, who
testified as follows: "I want to say that Mr.
Berne is wrong in his statement that the
court declared that if he did render a judg-
ment with a writ of inquiry that he would
let it relate back to Berne's request, made on
appearance day.  Mr. Berne tried to get the

court to do that, and the court respectfully declined to do that, and the court intimated to me, though he did not commit himself, that if at the end of the hearing I decided to file an answer he would be inclined to permit it to be done, and he said that he would decide that, however, when the hearing was through." The record does not suggest anything other than mere difference in the recollection of the parties, as is not infrequent, and as could be readily accounted for without intimation of bad faith on the part of either counsel; and, as we gather from the record, there is some uncertainty as to just when the statements were made by the court. The court states in one place that, in substance, Mr. Berne had stated what occurred, and that there were some authorities presented to the court, and after examining these authorities he came to the conclusion that it was his duty to render judgment, as he did, and that it related back to the date of the appearance day. The court also states that this conversation and statement did not occur on appearance day, and that it occurred after the case had been argued. We do not deem it important to determine just what the precise statement of the court was, and have set out what appears above, for the purpose, mainly, of suggesting that the failure to file an answer earlier than when same was filed, as hereinafter stated, was not due to any deliberate intention not to file same, or to any culpable negligence in not filing same earlier. An answer was filed on behalf of the company on Friday, February 5th. On the following day (February 6th), counsel for plaintiff sought and obtained from the court a judgment by default in the case, with a writ of inquiry; neither the court nor counsel at this time knowing or being in any way advised that an answer had been filed for the railway company the day before. On his attention being called to the judgment by default, Mr. Harrison, with other counsel, filed a motion to set aside the default, alleging, among other things, that the railway company had a good and meritorious defense to the claim asserted in the petition, and that an answer had been filed prior to the rendition of the default judgment. This motion was contested by the plaintiff, and on hearing of the motion and answer the court declined to set aside the judgment by default, which judgment was, by the Court of Civil Appeals for the Sixth Supreme Judicial District, affirmed (130 S. W. 182).

[1] We think both courts were in error, and that the judgment by default should, under the circumstances, have been set aside, and the case tried on its merits. A review of the entire record has convinced us that there is nothing in it to suggest any purpose, other than the declared purpose of the suggestion of lack of service, and pending the decision of this question an answer was filed. There is no suggestion in the record that the question of lack of service was obtruded upon the attention of the court, either for any sinister or improper purpose, or with any intent, or that the same had the effect, to delay the proceedings. The fact that this suggestion was made by Mr. Harrison, who thereafter filed an answer for the railway company, should not and does not, of itself, imply any such purpose. It must and should be assumed in favor of counsel, and also of the court below, that their conduct in such matter was within the limits of professional propriety. If the court had acted on the motion on appearance day, on the suggestion made by amicus curiæ, and had held service sufficient, undoubtedly that reasonable discretion which must guide and control all judges would have impelled and compelled him to permit an answer to have been filed. If the statement of the court be fully credited, and as applying to a time when Mr. Harrison was present, that if the motion was sustained that the rights of all parties should be preserved as they were on appearance day, should not the right to file an answer be preserved to a defendant? It has not been and is not the policy of the law to cut off defenses arbitrarily and deny litigants their day in court. When a suggestion is made by one acting as amicus curiæ, if same is covinous or corruptly done, or in such a manner as to deliberately trifle with the court, authority rests in the court to meet such an issue, as it should be met, with all the power and authority the court possesses; but, in the absence of such conditions, even if it be conceded that the persons making the suggestion were in error as to the facts, or had misconceived the law, it certainly should not be the policy of the law to deprive his client of any hearing, and thus summarily dispose of his rights by a default judgment against him.

A somewhat similar question came before this court in the case of Jones v. City of Jefferson, 66 Tex. 578, 1 S. W. 903. In that case service was had upon certain persons, alleged to be officers of the city of Jefferson. They appeared and filed affidavits, denying the fact of their official capacity. Certain members of the bar appeared as friends of the court, and suggested that judgment should not be rendered against the city, because the parties served with citation as its officers were not in fact such, and asked the court to hear testimony upon the question. At the fall term of court thereafter, the court proceeded to hear the testimony, and Jones, plaintiff in the case, asked judgment by default, which the court refused to grant, to which he excepted, and declined to continue the case for further service. The court dismissed the case, and an appeal resulted. In discussing the matter, the court uses this language: "It would, therefore, seem that when it is brought to the knowledge of the court by the affidavit of the person upon whom the citation has been served that a

judgment by default is being sought against a corporation by service upon him as its officer or agent, and that he is not such, the court should have the power to inquire into the fact, or at least should require of plaintiff proof of the official character or agency of the person before proceeding to judgment. The office of a friend of the court is restricted to making suggestions as to questions apparent upon the record, or matters of practice presenting themselves for determination in course of proceedings in open court. But in the case of State v. Jefferson Iron Co., 60 Tex. 312, a doubt as to the service is specified as one of the matters about which it was permissible for him to be heard. And the opinion in that case holds that the court could only do with the suggestion of counsel what it could do without, and no more. But if the court could, of its own motion, inquire into a jurisdictional fact, would it be error to permit counsel to assist it in making the inquiry?"

Many years thereafter the same case (City of Jefferson v. Jones, 74 Tex. 635, 12 S. W. 749) came before this court on another appeal, and Judge Henry there stated broadly that "at any time before a judgment by default has been actually announced by the court a defendant has the right to file his answer." In that case the record shows that the suit was brought in 1883, that a judgment was demanded on the 20th day of December, 1886, and that no answer was filed in the case until the succeeding day, December 21, 1886.

[2] We think, in view of the fact that the answer in this case was filed only three days after appearance day, and pending the determination of the suggestion of lack of service, that the action of the court in granting a default judgment was improvident and improper, and that the court on timely application should have set aside the order, and let the case stand for trial on its merits. From these conclusions, it results that the judgments of the Court of Civil Appeals and district court will be reversed, and judgment by default be set aside, and the cause remanded for further proceeding in accordance with law.